**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION**

| | |
|---|---|
| **NINA BUIE,** | |
| *Plaintiff,* | CASE NO.: 1:23-cv-2085 |
| vs. | |
| **SOUTHERN NEW HAMPSHIRE UNIVERSITY CORP., LAUNCH SERVICING, LLC,** *and* **SIMM ASSOCIATES, INC.** | **COMPLAINT AND DEMAND FOR JURY TRIAL** |
| *Defendants.* | |

## COMPLAINT AND DEMAND FOR JURY TRIAL

COMES NOW the Plaintiff, Nina Buie ("Ms. Buie"), by and through her attorneys, Seraph Legal, P.A., and complains of the Defendants, Southern New Hampshire University Corp. ("SNHU"), Launch Servicing, LLC ("Launch Servicing"), and Simm Associates, Inc. ("Simm") (jointly, the "Defendants"), stating as follows:

## PRELIMINARY STATEMENT

1.      This is an action by Ms. Buie against SNHU only for violations of the Truth in Lending Act, 15 U.S.C. § 1601, *et seq.* ("TILA"), Regulation Z, 12 C.F.R. § 1026, *et seq.*, Indiana's Deceptive Consumer Sales Act, Ind. Code § 24-5-0.5-0.1, *et seq.* ("IDCSA"), and for Fraud under Ind. Code § 35-43-5-4, against both SNHU and Launch Servicing for violations of Indiana's Uniform Consumer Credit Code, Ind. Code § 24-4.5-7-101, *et seq.* ("IUCCC"), and against Simm only for violations of the Fair Debt Collection Practices Act, 15 U.S.C. § 1692, *et seq.* ("FDCPA").

## JURISDICTION AND VENUE

2.　　Subject matter jurisdiction for Plaintiff's TILA and FDCPA claims arise under 28 U.S.C. § 1331, as TILA and the FDCPA are federal statutes.

3.　　This Court has supplemental jurisdiction over Plaintiff's state law claims under 28 U.S.C. § 1367.

4.　　The Defendants are subject to the jurisdiction of this Court pursuant Ind. Trial R. 4.4 and Fed. R. Civ. P. 4(k).

5.　　Venue is proper in the Southern District of Indiana pursuant to 28 U.S.C. § 1391(b)(2), because a substantial part of the acts complained of were committed and/or caused by the Defendants within the Southern District of Indiana.

## PARTIES

6.　　Ms. Buie is a natural person currently residing in Sherwood, Arkansas.

7.　　Ms. Buie is a *Consumer* as defined by the FDCPA, 15 U.S.C. § 1692a(3).

8.　　SNHU is a New Hampshire corporation with a principal address of 2500 N. River Rd, Manchester, NH, 03106 and an Indiana Registered Agent of Corporation Service Company, North Pennsylvania Street, Suite 1610, Indianapolis, IN, 46204.

9.　　SNHU is the successor-in-interest to the previous for-profit corporation, Kenzie Academy, Inc. ("Kenzie Academy"), which was incorporated in the State of Delaware with its principal place of business in Indianapolis, Indiana.

10.　　Kenzie Academy was originally registered in the State of Indiana on or about June 13, 2017. Kenzie Academy had its Certificate of Authority revoked on or about March 5, 2022.

11.　　Southern New Hampshire University registered to do business in the State of Indiana on or about March 31, 2021, as a foreign nonprofit corporation, and remains registered

with the Secretary of State of Indiana as of the filing of this Complaint as owner and operator of "Kenzie Academy."

12.     Launch Servicing is a Delaware limited liability company with a principal address of 402 W. Broadway, 20th Fl., San Diego, CA 92101.

13.     Launch Servicing is registered to conduct business in the State of Indiana, where its registered agent is National Registered Agents, Inc., 334 North Senate Avenue, Indianapolis, IN, 46204.

14.     Launch Servicing is a furnisher of information to the "big three" consumer reporting agencies, Experian, Equifax and Trans Union.

15.     Simm is a Delaware corporation with a principal address of 800 Pencader Drive, Newark, Delaware 19702.

16.     Simm's Indiana Registered Agent is Corporation Service Company, North Pennsylvania Street, Suite 1610, Indianapolis, IN, 46204.

17.     Simm is a *Debt Collector* within the meaning of the FDCPA, 15 U.S.C. §1692a(6), in that it uses an instrumentality of interstate commerce, including the internet, postal mail, and / or telephone, for its business, the principal purpose of which is the collection of debts, and / or it regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another.

## FACTUAL ALLEGATIONS

### Ms. Buie's Income Share Agreement

18.     From October 2020 through March 2021, Ms. Buie was a student at Kenzie Academy.

19.     Kenzie Academy billed itself as an online "trade school" – a school which students could obtain certain specialized certifications online.

20.     Ms. Buie enrolled at Kenzie Academy for purposes of obtaining a certification in Software Engineering.

21.     Kenzie Academy offered its students the ability to finance their education through income share agreements ("ISAs") – a financing mechanism whereby Kenzie Academy received a portion of the student's income following the completion of their education program.

22.     Ms. Buie entered into an income share agreement with Kenzie Academy on or about September 15, 2020. **SEE PLAINTIFF'S EXHIBIT A.**

23.     Ms. Buie's ISA states prominently, at the top "THIS IS NOT A LOAN OR CREDIT."

24.     Ms. Buie's ISA states that the costs of the services Ms. Buie would receive through this ISA were $23,900.00.

25.     The full $23,900 was applied to cover Ms. Buie's tuition at Kenzie Academy.

26.     To cover these "costs of services," Ms. Buie was required to "share" 13% of her gross monthly income with Kenzie Academy, which "sharing" would continue for 48 payments, for 96 months, or until $41,825.00 had been paid by Ms. Buie.

27.     The ISA provided for a deferment period of three months following Ms. Buie's enrollment, after which payments would begin.

28.     SNHU purchased Kenzie Academy in March 2021, to take on their software engineering, user experience design, and business-to-business programs.

29.     SNHU is thus the successor-in-interest to Kenzie Academy.

**Launch Servicing's Servicing of the ISA**

30.     On or about December 7, 2020, Ms. Buie's ISA was assigned to Launch Servicing for loan servicing.

31.     Launch Servicing thereafter begin reporting Ms. Buie's ISA to each of Experian, Equifax and Trans Union, monthly.

32.     Launch Servicing reported the ISA as an *education loan*.

33.     Per the ISA Agreement, Ms. Buie would only be responsible for payments if her salary exceeded $40,000 per year. **SEE PLAINTIFF'S EXHIBIT A.**

34.     However, on or about November 8, 2022, Launch emailed Ms. Buie, claiming that she was delinquent on her account.

35.     On November 23, 2022, Ms. Buie messaged Launch Servicing through its online portal, disputing the late payment, as she owed $0 at the time based on income.

36.     Despite this, Launch Servicing continued to assert that she was delinquent, emailing her Past Due Notices, semi-monthly, from November 2022 through March 2023.

**Kenzie Assigns Debt to Simm for Collection**

37.     At some point in March or April 2023, Kenzie Academy assigned Ms. Buie's ISA to Simm, or otherwise contracted with Simm to collect the ISA.

38.     On or about April 14, 2023, Simm mailed Ms. Buie a letter, therein seeking to collect the ISA. **SEE PLAINTIFF'S EXHIBIT B.**

39.     Simm's April 2023 Letter to Ms. Buie stated: "Total amount of the debt now: $41,900."

40.     Simm's April 2023 Letter included the $41,900 balance in at least two other locations.

41.     Ms. Buie's ISA, Paragraph 8(b), states:

**No Acceleration of Payments.** Funder will not "accelerate" any amounts that are owed in the event that the Participant fails to make Payments or fails to provide required information, as required under this Agreement.

42.     Simm's April 2023 Letter was therefore false, as, even had Ms. Buie defaulted, no right to accelerate the entire Payment Cap existed under the ISA.

43.     Beyond this, payment of the Payment Cap is contingent on Ms. Buie maintaining employment with a salary of at least $40,000 per year, among other conditions.

44.     As these conditions had not yet occurred, the $41,900 payment cap cannot be due and owing.

### Ms. Buie's Deferment and Continued Disputes

45.     Ms. Buie continued to message Launch Servicing through its online portal, asserting that she did not owe anything pursuant to the terms of her ISA.

46.     In early May 2023, Launch Servicing agreed, and deferred her ISA through August 2023.

47.     In September 2023, Launch Servicing, without obtaining additional proof of income, claimed that Ms. Buie owed $1,345.82.

48.     Kenzie Academy thereafter assigned Ms. Buie's ISA to Simm, once again, or otherwise contracted with Simm to collect the ISA.

49.     On October 12, 2023, Simm mailed Ms. Buie a second collection letter. **SEE PLAINTIFF'S EXHIBIT C.**

50.     Simm's October 12, 2023 Letter stated: "As of 09/13/2023 you owed: $41,925.00" and at the top, "Balance: $41,925.00."

51.     Simm's October 12, 2023 Letter also stated, in bold lettering: "Total amount of the debt now: $41,925.00."

52.     As with Simm's first collection letter, this is false, as the ISA could not be contractually accelerated, and no balance existed due to the non-occurrence of the contingencies.

53.     Launch Servicing's payment portal with Launch Servicing now falsely shows Ms. Buie's account as Past Due, owing a repayment amount of $41,925.00.

## The ISA Amounts to a Private Education Loan

54.     While Kenzie Academy claimed in bold lettering that Ms. Buie's ISA was not a loan, The Consumer Financial Protection Bureau ("CFPB") and other state equivalent agencies have found that these sorts of agreements are "loans" as defined by federal and state statutes and regulations.

55.     In January 2022, the CFPB updated its examination procedures for private student lending to explicitly reference ISAs.

56.     In March 2022, the U.S. Department of Education (specifically, the Office of Postsecondary Education) reminded all colleges and other entities involved in recommending, promoting, or endorsing private education loan products that they must comply with existing consumer protection requirements for preferred lender arrangements established under the Higher Education Act.

57.     From the U.S. Department of Education's perspective, as of March 2022 through today, ISAs used to finance expenses for postsecondary education are considered private education loans for the purposes of the Department's rules on preferred lender arrangements. 20 U.S.C. § 1019.

58.     Indeed, the ISA provided Ms. Buie with funds to cover the expenses of post-secondary education, which she was then required to repay, plus interest.

59.     The ISA thus amounts to a private education loan under TILA, 15 USC § 1650(a)(8).

60.     SNHU and Launch Servicing are "private educational lenders" under TILA, 15 U.S.C. § 1650(a)(7)(C), because they are each "engaged in the business of soliciting, making, or extending private education loans."

61.     The Defendants' efforts to collect the total Payment Cap, as if it were a balance on a traditional loan, make clear that the Defendants viewed Ms. Buie's ISA as a loan of money, and not a contingent investment in Ms. Buie.

62.     On information and belief, Kenzie Academy styled its education loans as ISAs in an attempt to avoid state usury laws, and other lending regulations.

63.     Paying a total of $41,825 over a four-year period, on a loan with a principal of $23,900, equates to an Annual Percentage Rate exceeding 30% - rates deemed illegal in most states.

64.     Likewise, a majority of states, including Indiana, where Kenzie Academy was domiciled, require a license to issue and collect a loan.

65.     Kenzie Academy failed to obtain any such license, and thus had no legal ability to make a loan to Ms. Buie.

66.     Indiana also requires loan servicers, such as Launch Servicing, to obtain a license.

67.     Launch Servicing failed to obtain any such license, and thus had no legal ability to collect Ms. Buie's ISA.

68.     Ms. Buie's ISA was thus void under Indiana law.

69.     Ms. Buie suffered severe emotional distress in being subjected to illegal collection actions by the Defendants over an unlawful debt which she, pursuant to Indiana law, does not owe.

70.     Ms. Buie has also suffered significant emotional distress upon learning that Kenzie Academy did not have the legal authority to issue the ISA to her, nor Launch Servicing the ability to service it.

71.     Ms. Buie has suffered considerable stress and anxiety and exhausted valuable time and energy in her many attempts to resolve this issue within Launch Servicing's online portal.

72.     Ms. Buie has hired the aforementioned law firm to represent her in this matter and has assigned her right to fees and costs to such firm.

**COUNT I**
**VIOLATION OF TILA - 15 U.S.C. § 1650(E)**
**SNHU ONLY**

73.     Ms. Buie adopts and incorporates paragraphs 1 – 72 as if fully stated herein.

74.     TILA prohibits "private educational lenders" from "impos[ing] a fee or penalty on a borrower for early repayment or prepayment of any private education loan." 15 U.S.C. § 1650(e).

75.     Ms. Buie's ISA calculated the Payment Cap as 1.75x the ISA Amount.

76.     Ms. Buie could only prepay the ISA by paying the Payment Cap, not the ISA Amount, plus a growth component.

77.     The Payment Cap thus amounts to a prepayment penalty on a private education loan in violation of 15 U.S.C. § 1650(e).

**WHEREFORE**, Ms. Buie respectfully requests this Honorable Court enter judgment against SNHU, ordering:

a.     Damages of twice the finance charge, pursuant to 15 U.S.C. § 1640(a)(2)(A)(i), or Ms. Buie's actual damages, whichever are greater;

b.      Reasonable costs and attorneys' fees pursuant to 15 U.S.C. § 1640(a)(3); and

c.      Such other relief that this Court deems just and proper.

## COUNT II
## VIOLATIONS OF REGULATION Z
## SNHU ONLY

78.     Ms. Buie adopts and incorporates paragraphs 1 – 72 as if fully stated herein.

79.     Ms. Buie's ISA provided her with the ability to defer payment of her tuition at Kenzie Academy.

80.     Ms. Buie's ISA therefore meets the definition of "Credit" under Regulation Z, 12 C.F.R. § 1026.2(a)(14).

81.     Ms. Buie's ISA was extended to her for the purpose of covering her tuition at Kenzie Academy – postsecondary education.

82.     Ms. Buie's ISA was therefore a "private education loan" under Regulation Z, 12 C.F.R. § 1026.46(b)(5).

83.     12 C.F.R. § 1026.18(b) requires creditors to disclose the amount financed, using that term.

84.     12 C.F.R. § 1026.18(d) requires creditors to disclose the finance charge, using that term.

85.     12 C.F.R. § 1026.18(e) requires creditors to disclose the annual percentage rate, using that term.

86.     12 C.F.R. § 1026.47(a)-(b) requires the creditor of a private education loan to disclose, on or with a solicitation or an application for a private education loan, a statement that if the consumer files for bankruptcy, the consumer may still be required to pay back the loan.

87.     Ms. Buie's ISA did not contain *any* of the disclosures required by 12 C.F.R. §§ 1026.18(b), (d) and (e), and 12 C.F.R. § 1026.47(a)(3)(iv).

88.     SNHU is the successor in interest to Kenzie Academy, and thus violated Regulation Z.

**WHEREFORE**, Ms. Buie respectfully requests this Honorable Court enter judgment against SNHU, ordering:

a.      Damages of twice the finance charge, pursuant to 15 U.S.C. § 1640(a)(2)(A)(i), or Ms. Buie's actual damages, whichever are greater;

b.      Reasonable costs and attorneys' fees pursuant to 15 U.S.C. § 1640(a)(3); and

c.      Such other relief that this Court deems just and proper.

## COUNT III
## VIOLATIONS OF THE IUCCC, IND. CODE § 24-4.5-3-502
## SNHU ONLY

89.     Ms. Buie adopts and incorporates paragraphs 1 – 72 as if fully stated herein.

90.     Ms. Buie's ISA involved the creation of a debt by Kenzie Academy by virtue of Kenzie Academy's agreement to pay Ms. Buie's tuition.

91.     Ms. Buie's ISA thus meets the definition of a "loan" under Ind. Code § 24-4.5-3-106.

92.     Ms. Buie's ISA also meets the definition of a "consumer loan" under Ind. Code § 24-4.5-1-301.5, as:

a.      Ms. Buie is not an organization;

b.      Ms. Buie utilized the funds from the ISA for her personal education;

c.      The ISA contained a finance charge and was payable in installments; and,

d.      The principal of the ISA, the "ISA Amount," did not exceed the exempt

threshold amount.

93.     Ind. Code § 24-4.5-3-502 requires that any person engaged in the making of consumer loans obtain a license.

94.     SNHU failed to obtain any such license.

95.     Ms. Buie's ISA was thus void under Indiana Law.  Ind. Code § 24-4.5-5-202(2).

**WHEREFORE**, Ms. Buie respectfully requests this Honorable Court enter judgment against SNHU, ordering:

    a.     Damages of all amounts paid by Ms. Buie towards the void ISA, pursuant to Ind. Code § 24-4.5-5-202;

    b.     Reasonable costs and attorneys' fees pursuant to Ind. Code § 24-4.5-5-202(8); and,

    c.     Such other relief that this Court deems just and proper.

### COUNT IV
### VIOLATIONS OF THE IUCCC, IND. CODE § 24-4.5-3-502
### LAUNCH SERVICING ONLY

96.     Ms. Buie adopts and incorporates paragraphs 1 – 72 and 90 – 92 as if fully stated herein.

97.     Launch Servicing received an assignment of Ms. Buie's ISA from Kenzie Academy.

98.     Launch Servicing was therefore required to obtain a license pursuant to Ind. Code § 24-4.5-3-502.

99.     Launch Servicing failed to obtain any such license, and therefore had no legal ability to service Ms. Buie's ISA.

**WHEREFORE**, Ms. Buie respectfully requests this Honorable Court enter judgment against Launch Servicing, ordering:

    a.      Damages of all amounts paid by Ms. Buie towards the void ISA, pursuant to Ind. Code § 24-4.5-5-202;

    b.      Reasonable costs and attorneys' fees pursuant to Ind. Code § 24-4.5-5-202; and,

    c.      Such other relief that this Court deems just and proper.

**COUNT V**
**VIOLATIONS OF THE IUCCC, IND. CODE § 24-4.5-3-202**
**LAUNCH SERVICING AND SNHU**

100.    Ms. Buie adopts and incorporates paragraphs 1 – 72 and 90 – 92 as if fully stated herein.

101.    Ind. Code § 24-4.5-3-201(1) provides that "with respect to a consumer loan, a lender may contract for a loan finance charge, calculated according to the actuarial method, not exceeding twenty-five percent (25%) per year on the unpaid balances of the principal."

102.    Ind. Code § 24-4.5-3-202 provides the only permissible fees in addition to the loan finance charge.

**WHEREFORE**, Ms. Buie respectfully requests this Honorable Court enter judgment against the SNHU and Launch Servicing, ordering:

    a.      Damages of all amounts paid by Ms. Buie towards the void ISA, pursuant to Ind. Code § 24-4.5-5-202;

    b.      Reasonable costs and attorneys' fees pursuant to Ind. Code § 24-4.5-5-202; and,

    c.      Such other relief that this Court deems just and proper.

<u>**COUNT VI**</u>
<u>**FRAUD IN VIOLATION OF IND. CODE § 35-43-5-4**</u>
<u>**SNHU ONLY**</u>

103.     Ms. Buie adopts and incorporates paragraphs 1 – 72 as if fully stated herein.

104.     Kenzie Academy committed criminal fraud by knowingly or intentionally (a) making a false or misleading statement and/or (b) by creating a false impression in Ms. Buie with the intent to obtain property – specifically U.S. currency – to which they were not entitled.

105.     Specifically, Kenzie Academy knowingly or intentionally represented that Ms. Buie's ISA was not a loan and that SNHU and Launch Servicing had the legal authority to issue and collect the ISA, when they were not licensed to do so.

106.     SNHU is the successor in interest to Kenzie Academy, and is thus liable for the above conduct.

**WHEREFORE**, Ms. Buie respectfully requests this Honorable Court enter judgment against SNHU, ordering:

a.       Treble damages pursuant to Ind. Code § 34-24-3-1(1);

b.       Reasonable costs and attorneys' fees pursuant to Ind. Code §§ 34-24-3-1(2) & (3);

c.       Such other relief that this Court deems just and proper.

<u>**COUNT VII**</u>
<u>**VIOLATION OF THE IDCSA, IND. CODE § 35-43-5-4**</u>
<u>**SNHU ONLY**</u>

107.     Ms. Buie adopts and incorporates paragraphs 1 – 72 as if fully stated herein.

108.     Kenzie Academy provided a service to Ms. Buie in the form of post-secondary education.

109.     Kenzie Academy solicited these services by offering to pay tuition via an ISA.

110.    Ms. Buie's execution of the ISA to cover her tuition at Kenzie Academy thus amounts to a "Consumer transaction" pursuant to Ind. Code § 24-5-0.5-2.

111.    Kenzie Academy provides both the education and income share agreements for funding.

112.    Kenzie Academy thus amounts to a "supplier" pursuant to Ind. Code § 24-5-0.5-2.

113.    Kenzie Academy committed an unfair and deceptive act by falsely asserting that Ms. Buie's ISA was not a loan, and that SNHU and Launch Servicing had the legal authority to issue and collect the ISA, when they were not licensed to do so.

114.    Ms. Buie relied on Kenzie Academy's deceptive act in entering into the ISA and enrolling at Kenzie Academy.

115.    Kenzie Academy's conduct was willful and intentional, as Kenzie Academy utilized ISAs in an attempt to avoid state lending and usury laws.

116.    SNHU is the successor in interest to Kenzie Academy, and is thus liable for the above conduct.

**WHEREFORE**, Ms. Buie respectfully requests this Honorable Court enter judgment against SNHU, ordering:

a.    Treble damages pursuant to Ind. Code § 24-5-0.5-4(a)(1);

b.    Statutory damages of $1000 pursuant to Ind. Code § 24-5-0.5-4(a)(2);

c.    Reasonable costs and attorneys' fees pursuant to Ind. Code § 24-5-0.5-4(a)(2); and,

d.    Such other relief that this Court deems just and proper.

**COUNT VIII**
**VIOLATION OF THE FDCPA, 15 U.S.C. § 1692e**
**SIMM ONLY**

117.    Ms. Buie adopts and incorporates paragraphs 1 – 72 as if fully stated herein.

118.    Ms. Buie utilized the ISA to finance her personal education.

119.    The ISA thus meets the definition of a "debt" under the FDCPA, 15 U.S.C. § 1692a(5).

120.    Simm mailed Ms. Buie at least two collection letters, each of which meet the definition of a "communication" per 15 U.S.C. § 1692a(2).

121.    Simm's collection letters stated a balance and sought payment of the ISA.

122.    Simm's collection letters were therefore in connection with collection.

123.    Simm's collection letters falsely stated the full Payment Cap on the ISA as a balance due and owing by Ms. Buie.

124.    Simm therefore violated 15 U.S.C. § 1692e.

**WHEREFORE**, Ms. Buie respectfully requests this Honorable Court enter judgment against Simm, ordering:

a.    Statutory damages of $1,000.00, pursuant to 15 U.S.C. § 1692k(a)(2)(A);

b.    Actual damages, pursuant to 15 U.S.C. § 1692k(a)(2)(A);

c.    Reasonable costs and attorneys' fees pursuant to 15 U.S.C. § 1692k(a)(3); and,

d.    Such other relief that this Court deems just and proper.

**COUNT IX**
**VIOLATION OF THE FDCPA, 15 U.S.C. § 1692f(1)**
**SIMM ONLY**

125.    Ms. Buie adopts and incorporates paragraphs 1 – 72 and 118-122 as if fully stated herein.

126.     Simm violated 15 U.S.C. § 1692(f)(1) when it attempted to collect an amount not authorized by law, as the ISA was void in its entirety, or at a minimum, no right to accelerate the entire Payment Cap existed.

**WHEREFORE**, Ms. Buie respectfully requests this Honorable Court enter judgment against Simm, ordering:

a.      Statutory damages of $1,000.00, pursuant to 15 U.S.C. § 1692k(a)(2)(A);

b.      Actual damages, pursuant to 15 U.S.C. § 1692k(a)(2)(A);

c.      Reasonable costs and attorneys' fees pursuant to 15 U.S.C. § 1692k(a)(3); and,

d.      Such other relief that this Court deems just and proper.

## DEMAND FOR JURY TRIAL

Ms. Buie hereby demands a jury trial on all issues so triable.

Respectfully submitted this November 17, 2023, by:

**SERAPH LEGAL, P. A.**

*/s/ Bryan J. Geiger*
Bryan J. Geiger, Esq.
Florida Bar No.: 118103
BGeiger@SeraphLegal.com
1614 North 19th Street
Tampa, FL 33605
Tel: 813-567-1230
Fax: 855-500-0705
*Counsel for Plaintiff*

## ATTACHED EXHIBIT LIST
A. Ms. Buie's Income Share Agreement
B. Simm's April 14, 2023 Collection Letter
C. Simm's October 12, 2023 Collection Letter