# EXHIBIT A
## Ms. Buie's Income Share Agreement

DocuSign Envelope ID: C3B916A2-0193-48E8-A7B0-0C577E9895F8

THIS IS A COPY
The Authoritative Copy of this record is held at NA3.docusign.net

**YOUR INCOME SHARE AGREEMENT'S BASIC TERMS**

### THIS IS NOT A LOAN OR CREDIT

| Participant Name: | Nina Buie |
|---|---|
|  |  |
| Program: | Software Engineering |

| Funding Amount | Income Share | Payment Term | Payment Cap |
|---|---|---|---|
| $23900 | 13% | 48 Months | $41825 |
| The amount of funds you will receive plus any funding charges | The percent of your income used to calculate your monthly payment | The number of months during which you will make payments indexed to your income | The maximum amount you could pay during your Payment Term |

| Funding Amount: | Amount paid on behalf of student to Program: | | $23900 |
|---|---|---|---|
|  | Program Cost (Price): | (=) | $23900 |
|  | Total amount funded: | (=) | $23900 |
|  | Initial Charges | | |
|  |    Application Fee: | (+) | $0.00 |
|  |    Disbursement Fee: | (+) | $0.00 |
|  | Total Funding Amount: | (=) | $23900 |
|  | Disbursement Date(s): 12/15/2020 | | |
|  | *Note: The amount that you make in Payments back to the fund may be* more *or* less *than this Total Funding Amount.* | | |
| Percentage of Income: | You will make payments based on   13%   of your Personal Income to the fund each year, except that:<br>  • In years where your Personal Income is below   $40000   , you owe nothing.<br>  • If the Term covers part of a year, your obligation adjusts proportionally.<br>To meet this obligation, you are required to make Monthly Payments based on an estimate of what you expect your annual income will be for a given year, except that you will not be required to make Monthly Payments in months where:<br>  • Your Estimated Annual Income is below   $40000   , or<br>  • You have been granted a forbearance or payment deferral.<br>*Note: The percentage amount above is* <u>*not*</u> *an interest rate.* | | |

**EXHIBIT A**
**Ms. Buie's Income Share Agreement**

DocuSign Envelope ID: C3B916A2-0193-48E8-A7B0-0C577E9895F8

THIS IS A COPY
The Authoritative Copy of this record is held at NA3.docusign.net

| | |
|---|---|
| **Term:** | You will make Payments back to the fund for ___48 Months___, except this Term may be extended by ___48 Months___ (or a proportional number of months, when the Term covers a part of a year) when your Annual Personal Income is below ___$40000___ in a given year. |
| **Fees:** | • Application Fee: $0.00     • Failure to Provide Documents Fee: $25.00<br>• Late Payment Fee: $25.00     • Stop Payment/Returned Check Fee: $25.00<br>• Check by Phone Fee: $0.00     • Returned Item or Electronic Debit Fee: $25.00 |
| **Termination, Prepayment and Payment Caps:** | Your obligation under this agreement ends when either:<br>• You have made Payments for ___48 Months___ (including any Term extensions, required Reconciliation Payments, and Fees); or<br>• You have paid Payment Cap prior to completing the Payment Term; or<br>• You may terminate this Agreement at any time by prepaying an amount equal to ___$41825___ (the "Payment Cap"), less any prior payments made and plus any outstanding Fees or other amounts due under this Agreement. You may terminate this Agreement prior to the end of the Grace Period by prepaying an amount equal to ___$41825___ (the "Grace Period Prepayment Amount"), less any prior payments made and plus any outstanding Fees or other amounts due under this Agreement.<br>*Note: You will never have to pay more than the Payment Cap during your Term.* |
| **Privacy and Confidentiality:** | Your privacy is important to us. You have been provided with the Privacy Policy that sets forth how we use your information. The Privacy Policy is also available at https://www.kenzie.academy. |

THIS INCOME SHARE AGREEMENT IS NOT A LOAN OR CREDIT. THIS AGREEMENT IS NOT AN ASSIGNMENT OF WAGES.

**THIS AGREEMENT REQUIRES THE USE OF ARBITRATION ON AN INDIVIDUAL BASIS TO RESOLVE DISPUTES, RATHER THAN JURY TRIALS OR CLASS ACTIONS. YOU MAY OPT-OUT OF ARBITRATION BY FOLLOWING THE PROCEDURE SET FORTH IN SECTION 15(B) BELOW. PLEASE READ SECTION 15 CAREFULLY AS IT AFFECTS YOUR LEGAL RIGHTS IN THE EVENT OF A DISPUTE.**

YOU SHOULD SEEK ADVICE ABOUT YOUR FINANCING OPTIONS FROM A TRUSTED ADVISOR BEFORE SIGNING THIS AGREEMENT.

THIS INCOME SHARE AGREEMENT ("ISA" OR "AGREEMENT") INCLUDES: (I) THIS DOCUMENT, THE APPROVAL DISCLOSURE, AND THE ARBITRATION AGREEMENT IN SECTION 15 BELOW (WHICH YOU CAN REJECT); (II) THE APPLICATION FORM; (III) THE FINAL DISCLOSURE, WHICH WILL BE PROVIDED TO YOU UPON EXECUTION OF THIS AGREEMENT TO SUMMARIZE THE TERMS OF THE AGREEMENT AND YOUR OBLIGATIONS (COLLECTIVELY WITH THE PARTICIPATION DISCLOSURE REFERENCED AS THE "DISCLOSURES"); AND (IV) THE OTHER CONSENTS OBTAINED FROM YOU, INCLUDING THE CONSENT TO ELECTRONIC COMMUNICATIONS. IN THE EVENT OF ANY INCONSISTENCY BETWEEN THIS DOCUMENT AND THE FINAL DISCLOSURE, OR BETWEEN THE FINAL DISCLOSURE AND THE OTHER DISCLOSURES, THE FINAL DISCLOSURE CONTROLS. IN THIS AGREEMENT, "YOU," "YOUR," AND "PARTICIPANT" MEAN THE PERSON WHO COMPLETES

# EXHIBIT A
## Ms. Buie's Income Share Agreement

DocuSign Envelope ID: C3B916A2-0193-48E8-A7B0-0C577E9895F8

THIS IS A COPY
The Authoritative Copy of this record is held at NA3.docusign.net

AND/OR SIGNS THE APPLICATION AND/OR REGISTRATION FORM AND THIS AGREEMENT. "WE," "OUR," "US," AND "FUNDER" MEAN KENZIE ACADEMY AND ANY OF ITS SUCCESSORS, SUCCESSORS-IN-INTEREST, TRANSFEREES, ASSIGNEES, AGENTS, DESIGNEES, OR SERVICERS.

### YOUR AGREEMENT WITH KENZIE ACADEMY INC.

**THIS INCOME SHARE AGREEMENT** (this "Agreement"), dated as of   09/15/2020   (the "Effective Date"), is by and between Kenzie Academy Inc. ("Funder"), a Delaware corporation with its principal place of business at 47 South Meridian Street, STE 302, Indianapolis, IN, 46204, and the Participant identified on the first page of this Agreement (the "Participant"). Together, Funder and Participant shall be referred to as the "Parties."

As more fully described in this Agreement, Funder agrees to fund the Participant's Program as of the Effective Date ("Funding") in exchange for the Participant pledging future Payments, as defined below, that are calculated based on the Participant's future income. The Participant will use the proceeds from the Funding for the cost of attendance incurred by the Participant in connection with the Participant's attendance at the Program indicated on the first page of this Agreement. In exchange, Funder will collect Payments based on a percentage of the Participant's Future Income for the Term of this Agreement.

1. **Definitions.** The capitalized terms contained herein have the meanings set forth in the schedule to this Agreement titled "Key Definitions."

2. **Payment of Funding.**

    a. **Timing of Funding.** At the later of: (i) thirty (30) calendar days after the Effective Date, or (ii) the disbursement dates set forth on the first page of this Agreement, and contingent on the Participant having provided any requested certifications, the Funder will make the Program available or otherwise pay the Funding set forth on the first page of this Agreement.

    b. **Refunds.** If you leave the Program before completion, you may be entitled to a reduction of your Funding Amount, Income Share, and other terms based on the Program and Funder's refund policy provided in your Enrollment Agreement with us. We will notify you as provided in this Agreement of any changes to your Funding Amount or other terms.

3. **Participant's Commitment to Make Payments.**

    a. **Commitment to make Payments; Monthly Payments.** The Participant pledges and agrees to make Monthly Payments and Reconciliation Payments, if any, as required by this Agreement. Monthly Payments are due on the due date of each month. Monthly Payments are paid in arrears. If the date for a Monthly Payment is not a business day, then the Monthly Payment shall be made on or before the next business day.

    b. **Fees for Late Payment.** Any Monthly Payment or Reconciliation Payment due from Participant to Funder that remains unpaid shall be subject to the late Payment Fees set forth in the Schedule of Fees, attached as Exhibit A.

    c. **Overpayment or Underpayment of Monthly Payments.** In the event the Participant pays Funder an amount greater than her/his Monthly Payment, Funder will apply the overpayment toward future Monthly Payments for a period of up of three (3) months. Any amounts paid in excess of three (3) months will be refunded to the Participant. The Participant may elect to have any overpayment repaid to them by contacting Funder. In the event that Participant overpays their Annual Payment Obligation, Funder will make a reconciliation to the Participant through the

## EXHIBIT A
## Ms. Buie's Income Share Agreement

DocuSign Envelope ID: C3B916A2-0193-48E8-A7B0-0C577E9895F8

THIS IS A COPY
The Authoritative Copy of this record is held at NA3.docusign.net

process described in Section 3(f). Participant has a contractual obligation to pay all Monthly Payments unless the Participant has reached the Payment Cap prior to the expiration of the Payment Term. Any underpayment of a Monthly Payment will be a breach of this Agreement and must be repaid by the Participant immediately.

   d. **Payment Period.**

      i. **In-Program Period.** The In-Program period begins after the initial disbursement of funds and ends when the Participant completes or withdraws from the Program. Interruptions in enrollment resulting from the Program's ordinary schedule (including breaks and vacations) shall not be deemed to cause the In-Program period to end.

      ii. **Grace Period.** The In-Program period will be followed by a three (3) month Grace Period before the Term begins. The Grace Period begins on the first day following the date you complete your In-Program period.

      iii. **No Payments Required.** The Participant is not required to make Payments during the In-Program or Grace Period; however, if the Participant begins earning income during the Grace Period over the Income Threshold, he or she may elect to waive the Grace Period, begin the Term, and start making Monthly Payments, as set forth in Sections 3(e) and 3(f). If Participant chooses to waive the Grace Period, Participant should provide Informal Income Documentation as set forth in Section 3(e)(ii). If Participant elects to waive the Grace Period, there will be no "carry forward" Grace Period. You may terminate this Agreement prior to the end of the Grace Period by prepaying an amount equal to $41825 (the "Grace Period Prepayment Amount"), less any prior payments made and plus any outstanding Fees or other amounts due under this Agreement.

      iv. **Term of Payments.** The Term begins after the In-Program period and Grace Period, or earlier as elected by the Participant in accordance with Section 5 and extends for the term set forth at the beginning of this Agreement (the "Term"). Payments begin after the close of the Grace Period. For example, if your Grace Period ends in February 2020 and you earn above the Income Threshold in March 2020, then your first payment will be due in April 2020. Payments linked to the Participant's Future Income are due during this period, and the Participant should make such Payments according to the process outlined in the following section. In the event of an occurrence of the circumstances discussed in Section 6 through Section 7 regarding extensions to this Agreement, the Term shall also be extended accordingly.

      **Application of Payments.** Payments are applied first to fees, costs, or expenses due under this Agreement, if any, and then to the Payment amount owed. Unless you previously reached the Payment Cap you must make all required Payments on time during the Payment Term, and at the expiration of the Payment Term you will not owe anything more, even if you did not reach the Payment Cap or repay the Funding Amount.

   e. **Process for Making Payments.**

      i. **Monthly Payments.** The Participant shall make Monthly Payments calculated based on an estimate of the Participant's annual income (the "Estimated Annual Income").

      ii. **Initial Estimate.** No later than thirty (30) days prior to the end of the Grace Period, the Participant shall provide Informal Income Documentation to establish the Estimated Annual Income. If no such documentation is provided within the time period allowed, Funder will set the Estimated Annual Income to the maximum income to $57,500.00,

**EXHIBIT A**
**Ms. Buie's Income Share Agreement**

DocuSign Envelope ID: C3B916A2-0193-48E8-A7B0-0C577E9895F8

THIS IS A COPY
The Authoritative Copy of this record is held at NA3.docusign.net

which is the annual blended average of self-reported post program salary data reported in the previous calendar year to Kenzie Academy by students.

iii. **Adjustments to Estimated Annual Income.**   If at any time the Participant reasonably believes his or her Personal Income for the current year is likely to materially deviate from her or his Estimated Annual Income, the Participant shall provide updated Estimated Annual Income documentation to Funder.  The Participant is encouraged to provide updates to this figure throughout the year.

1. **Changes in Employment Status.**  Any changes in employment status, including unemployment, the commencement of a new job, or a change in Disability status, must be reported to Funder as soon as the Participant becomes aware of the change.  The Participant must provide relevant documentation, acceptable to Funder, to show such change.  Funder will presume that the Participant has not experienced a change in employment status unless the Participant provides such documentation.

2. **Reductions in Personal Income.**  If the Participant believes that her or his Personal Income for the current year will be below her or his Estimated Annual Income, the Participant may request in writing, that the Participant's Monthly Payments be decreased.  Funder may request that the Participant provide supporting documentation for the lower estimate in a form acceptable to Funder.

iv. **Annual Updates to Estimated Annual Income.**   Funder will update the Participant's Estimated Annual Income each year on June 1. Unless the Participant provides updated Informal Income Documentation (or certifies that the existing Estimated Annual Income is accurate) before June 1 of that year, Funder will set the Participant's Estimated Annual Income to be the larger of the Participant's existing Estimated Annual Income, increased by 3.6%[1], and the Participant's Annual Personal Income on the prior year's tax return, increased by 3.6%, if the Participant has submitted Formal Income Documentation by that point. The Participant may elect to increase the Estimated Annual Income for a given year beyond the amounts indicated above. **Funder will assist the Participant with projecting the Participant's Estimated Annual Income if the Participant expects an increase in Personal Income during the upcoming year.**

v. **Calculation of Monthly Payment.**  The Participant's Monthly Payment shall be calculated as follows:

$$\frac{\text{(Estimated Annual Personal Income)}}{12} \times \text{Payment Percentage} = \text{Monthly Payment}$$

1. **Income Threshold.**  If at any time, the Participant's Estimated Annual Income is less than  $40000  the Participant may elect to set the Monthly Payment to $0.00.  Alternatively, the Participant may elect, in writing, to set the Monthly Payments to $0.00 in any month where the Participant's Estimated Annual Income is less than 1/12 the amount calculated in the prior sentence.  The Participant shall recertify their election to set the Monthly Payments at $0.00 on

---

[1] This percentage represents the twenty-year average wage increase in the United States based on the average wage index (AWI) provided by the Social Security Administration.  Information about the AWI can be accessed at the Social Security Administration's website- https://www.ssa.gov/oact/cola/awidevelop.html.

# EXHIBIT A
## Ms. Buie's Income Share Agreement

DocuSign Envelope ID: C3B916A2-0193-48E8-A7B0-0C577E9895F8

THIS IS A COPY
The Authoritative Copy of this record is held at NA3.docusign.net

a monthly basis. The ability to set the Monthly Payment to $0.00 does not relieve the Participant of the obligation to engage in Annual Reconciliation. If the Participant's Annual Personal Income exceeds the amount set forth in Section 3(d)(iii), then the Participant will continue to owe the Annual Reconciliation amount so calculated.

2. **Changes to Monthly Payments.** Changes to the Participant's Estimated Annual Income that are submitted by the Participant within three (3) business days of the due date for a Monthly Payment will take effect for the following Monthly Payment.

f. **Annual Reconciliation.**

i. **Formal Income Documentation.** The Participant shall provide updated tax returns and information to Funder no later than May 15th of each year of this Agreement (or thereafter if the Term expires before an Annual Reconciliation). This annual tax information (the "Formal Income Documentation")[2] will, in addition to the Participant's tax returns, include copies of the Participant's W-2 or similar IRS documentation, such as an IRS Form 1099-MISC, as well as proof of payment of income taxes.

1. **Annual Authorization for IRS Form 4506-T.** As part of the Formal Income Documentation, the Participant will complete and execute an IRS Form 4506-T authorizing Funder to obtain the Participant's tax return transcript and other return information from the IRS, dated not earlier than thirty (30) days before the date the Participant provides the form to Funder. To the extent there is a different in the income reported on the Participant's tax return transcript and the income reports on the Participant's tax return provided as part of the Formal Income Documentation, the income on the Participant's tax return transcript shall be the ultimate determinant of the Participant's obligation.

2. **Additional Tax Information.** Funder may require additional, supplemental information from the Participant to properly discern the Participant's Personal Income. This information will be provided within fifteen (15) days of such request.

3. **Extension for Providing Tax Forms.** The Participant may provide his or her most recent tax return later than May 15 only if they have received a filing extension from the IRS and provided Funder with a copy of any extension application or estimate of taxes. The Participant must notify Funder no later than April 15 if he or she will not be able to provide updated tax information or other supporting information by May 15, and must provide all updated tax and supporting information to Funder no later than thirty (30) days after such information is filed with the IRS.

4. **Failure to Provide Funder with Formal Income Documentation.** If the Participant does not provide Funder with the Formal Income Documentation, the Participant will be charged a fee, as listed on Exhibit A. If the documents are not provided within ninety (90) days of a due date, Participant shall be

---

[2] Funder, at its option may accept alternative documentation as Formal Income Documentation. This could include a year-end pay stub, Form W-2, Form 1099, Schedule K-1, online banking records, or another verifiable source acceptable to Funder.

# EXHIBIT A
## Ms. Buie's Income Share Agreement

DocuSign Envelope ID: C3B916A2-0193-48E8-A7B0-0C577E9895F8

THIS IS A COPY
The Authoritative Copy of this record is held at NA3.docusign.net

responsible for the payment of all costs incurred by Funder in obtaining the information which may include the costs of: (i) locating the Participant through databases, personal locating services, or private investigators, (ii) sending notices to the Participant, (iii) retaining an attorney to locate the Participant or file a lawsuit, or (iv) filing a suit to obtain the information.

    a.    **Annual Personal Income.** Funder will calculate Participant's Annual Personal Income for the year covered by the missing tax returns in accordance with Section 3(e)(iv). Failure to make Payments will be treated as a breach even if Participant's actual Annual Personal Income did not equal this amount. So long as the requested information is provided within one year, Participant's annual Payment obligation will be adjusted to reflect the Participant's actual Annual Personal Information.

    b.    **Monthly Payments.** With respect to the annual update to the Participant's Estimated Annual Income, Funder will increase Participant's Monthly Payments by calculating Participant's Monthly Payments in accordance with Section3(e)(iv). Failure to make the increased Payments will be treated as a breach, even if Participant's actual Annual Personal Income did not equal this amount. Upon providing the requested information, Participant's Payments will be adjusted to reflect the Participant's actual Annual Personal Income in accordance with Section 3(f)(ii). Adjustments will only be made to Payments that were due on a date that is the earlier of: (i) 6 months before the information was provided or (ii) the date that the last Annual Reconciliation should have been performed.

ii.    **Calculating Annual Payment Obligation.** Following the receipt of the updated tax forms from the Participant, Funder shall calculate the Participant's Annual Payment Obligation for the current year based on the income (the "Annual Personal Income") from the Formal Income Documentation submitted by the Participant.

    1.    **Annual Payment Obligation.** The Participant's Annual Payment Obligation for the current year will be calculated as follows:

> Annual Personal Income x Payment Percentage = Annual Payment Obligation

    2.    **Partial Years.** If the Term covers only a portion of the current year, the Participant's Annual Payment Obligation shall be adjusted in proportion to the fraction of such year covered by the Term. For example, if Participant's Term began on August 1 of a given year, Participant's Annual Personal Income would be multiplied by 5/12. The Annual Payment Obligation would be calculated using this amount, not the annual income shown in the Formal Income Documentation.

    3.    **Income Threshold.** If the Participant's Annual Personal Income is less than $40000 , adjusted annually for inflation[3], the Participant's Annual Payment Obligation will be $0.00. If the Participant's Annual Payment Obligation

---

[3] Inflation will be calculated using the Consumer Price Index for All Urban Consumers as released by the United States Bureau of Labor Statistics.

## EXHIBIT A
## Ms. Buie's Income Share Agreement

DocuSign Envelope ID: C3B916A2-0193-48E8-A7B0-0C577E9895F8

THIS IS A COPY
The Authoritative Copy of this record is held at NA3.docusign.net

is $0.00, the Term shall be extended by one year (or in the case where the Term covers a part of the year, the number of months in the current year covered by the Term). The maximum number of months the Term can be extended is 48 Months .

4. **Annual Maximum Payment.** If the Participant's Annual Personal Income is greater than the maximum income specified in column two of Exhibit B for the current year in the Participant's Term, the Participant's Annual Personal Income shall be treated as equal to such maximum income for the purposes of calculating the Annual Payment Obligation.

iii. **Reconciliation.** Following the determination of the Participant's Annual Payment Obligation, Funder shall calculate any Reconciliation Payments that are due to or from the Participant based on the sum of his or her Monthly Payments during the preceding year (the "Total Monthly Payments").

1. **Reconciliation Payments if Total Monthly Payments are Less than Annual Payment Obligation.** If the Total Monthly Payments are less than the Annual Payment Obligation, the Participant must make a Reconciliation Payment to Funder. Funder will provide notice to Participant indicating the amount of such Reconciliation Payment, and Participant will have thirty (30) days after the receipt of such notice to pay such amount. Participant shall pay a fee of two percent (2%) of any difference between the Annual Payment Obligation and the Total Monthly Payments if Participant's Total Monthly Payments did not equal at least the smaller of (i) ninety percent (90%) of the Annual Payment Obligation or (ii) one hundred (100%) of Participant's Annual Payment Obligation in the previous year.

2. **Reconciliation Payments if Total Monthly Payments are Greater than Annual Payment Obligation.** In the event the Total Monthly Payments are greater than the Annual Payment Obligation, Funder will provide notice to Participant according to the terms of this Agreement. Participant will have fifteen (15) days after the receipt of such notice to request a refund of the overpayment amount. In the event Participant does not request a refund within fifteen (15) days, Funder will apply the overpayment toward future Monthly Payments for up to three (3) months of Monthly Payments.

4. **Payments Will Vary with Income. THE PARTICIPANT'S MONTHLY PAYMENTS AND ANNUAL PAYMENT OBLIGATION WILL CHANGE DEPENDING ON THE PARTICIPANT'S PERSONAL INCOME. IF THE PARTICIPANT'S PERSONAL INCOME INCREASES, THE PARTICIPANT'S MONTHLY PAYMENTS AND ANNUAL PAYMENT OBLIGATION WILL INCREASE, THOUGH NEVER BEYOND THE ANNUAL PAYMENT CAPS SPECIFIED IN EXHIBIT B. IF THE PARTICIPANT'S PERSONAL INCOME DECREASES, THE PARTICIPANT'S MONTHLY PAYMENT AND ANNUAL PAYMENT OBLIGATION WILL DECREASE.**

5. **Prepayment; Payment Cap.** You may terminate this Agreement at any time by prepaying the Payment Cap, less any prior Payments made and plus any outstanding Fees or other amounts due under this Agreement. You may terminate this Agreement prior to the end of the Grace Period by prepaying an amount equal to $41825 (the "Grace Period Prepayment Amount"), less any prior payments made and plus any outstanding Fees or other amounts due under this Agreement.

6. **Death of a Participant.** If the Participant should die during the Term of this Agreement, all Payments will cease as of the previous month prior to her or his death. All accrued but unpaid Payments will continue to be due as of this date. The Funder may file a claim against the estate for any such accrued but unpaid

**EXHIBIT A**
**Ms. Buie's Income Share Agreement**

DocuSign Envelope ID: C3B916A2-0193-48E8-A7B0-0C577E9895F8

THIS IS A COPY
The Authoritative Copy of this record is held at NA3.docusign.net

Payments. No Monthly Payment or Reconciliation Payment will be due from the estate, unless previously calculated.

7.   **Permanent and Total Disability.** If a governmental agency or two doctors determine that Participant is Permanently and Totally Disabled, as defined by the governmental agency or by Funder in the case of a determination by two doctors, all Payment obligations under this Agreement shall cease and this Agreement shall terminate.

8.   **No Acceleration, Continued Accrual, or Remedies.**

   a.   **Default.** Without prejudice to Funder's other rights and remedies hereunder, and subject to applicable law, Funder may deem you to be in default under this Agreement upon: (i) a situation where any Payment is more than ninety (90) days late; (ii) Participant fails to provide any information required under this Agreement when required, including, without limitation, a failure to provide Funder a completed and signed IRS Form 4506-T or Form 4506T-EZ (or any successor form) within ninety (90) days of the annual deadline or Funder's request; or (iii) Participant's violation of any other provision of this Agreement that impairs Funder's rights, including but not limited to receipt of information Funder deems to be materially false, misleading, or deceptive.

   b.   **No Acceleration of Payments.** Funder will not "accelerate" any amounts that are owed in the event that the Participant fails to make Payments or fails to provide required information, as required under this Agreement.

   c.   **No Wage Assignment.** *This Agreement is not a sale, pledge, or assignment of the Participant's Future Income and Funder does not have a right under this Agreement to redirect, levy, or garnish any amounts that the Participant receives from the Participant's employer or any other sources of income. The Participant is, however, contractually obligated to make all Payments, including those that are calculated based upon the Participant's Future Income. The Participant's payment obligations are limited by both the minimum income thresholds set forth in this Agreement and the maximum income caps.* In the event that the Participant fails to make Payments under this Agreement, Funder may have a right, if allowed by state law, to redirect, levy, or garnish the Participant's wages if such remedy is allowed by state law following Funder's election to exercise remedies under state law for the collection of Payments. These remedies will only be available, if at all, under the supervision of a state's judicial system.

   d.   **Continued Accrual.** In the event that the Participant does not provide Monthly Payments, the amounts will continue to accrue each month at the last-calculated Monthly Payment amount. Only by providing updated Informal Income Documentation to Funder will change these amounts.

   e.   **Remedies.** In the event that Funder is required to file a lawsuit to collect Payments under this Agreement, and the Participant has opted out of Arbitration, the Participant agrees that Funder may seek all Monthly Payments and Reconciliation Payments that have come due as of the last calculated amount and that these amounts will be binding, even if your actual Personal Income has changed. Subject to applicable law (including any notice and/or cure rights provided by applicable law), upon a default, Funder may elect to: (i) enforce all legal rights and remedies in the collection of such amount and related fees (including any rights available to set off any state tax refund), (ii) exercise all rights provided in this Agreement, or (iii) utilize any combination of these remedies. Participant agrees to pay Funder's court costs, reasonable attorneys' fees, collection fees charged by states for state tax refund set-off, and other collection costs related to the default (including fees and costs due to Participant's bankruptcy or insolvency, if applicable) to the extent permitted by applicable law. In no event will Funder assert that Participant owes attorneys' fees in an amount that is the greater of: either (i) 35% of the amount Funder recovers; or (ii) $48,000.00. If Funder concludes that money damages are not a sufficient remedy for any particular breach of

**EXHIBIT A**
**Ms. Buie's Income Share Agreement**

DocuSign Envelope ID: C3B916A2-0193-48E8-A7B0-0C577E9895F8

THIS IS A COPY
The Authoritative Copy of this record is held at NA3.docusign.net

this Agreement, then Funder will be entitled to seek injunctive or other equitable relief as a remedy for any such breach to the fullest extent permitted by applicable law. Such remedy shall be in addition to all other remedies available at law or equity to Funder.

9. **Information Exchange.** To effectuate the provisions of this Agreement, the Parties will need to exchange information which may include information provided by taxing authorities. The Participant hereby agrees to execute such documents as Funder may request in order to obtain copies of information from such authority to determine the Participant's obligations under this Agreement. Both Parties agree to cooperate and timely execute documents to affect the terms of this Agreement.

10. **Fees.** Funder may assess Fees as set forth in Exhibit A, as these fees may be changed from time to time. The Participant will be notified in accordance with this Agreement of any changes in Fees.

11. **Monthly Payment Statements by Funder.** Funder will provide the Participant with Monthly Payment statements during the Term. Though additional information may be included, the Monthly Payment statement will include:

    a. The address and contact information for the administrator of this Agreement.

    b. The name and address of Funder, including any person to whom this Agreement has been sold and assigned.

    c. The Participant's Estimated Annual Income.

    d. The current Monthly Payment.

    e. The current Payment Cap.

    f. A statement of any past-due Monthly Payments or past due Reconciliation Payments.

    g. Any accrued Fees that the Participant owes.

12. **Credit Reporting.**

    a. Funder, or Funder's third-party vendors, underwriters, and servicers, may obtain a copy of the Participant's credit report as part of the application for Funding. The Participant consents to Funder obtaining a copy of her or his credit report and for the use of this information in making its Funding decisions.

    b. In addition, Funder may provide information about non-payment of Monthly Payments or Reconciliation Payments to credit reporting agencies if the Participant breaches this Agreement. The Participant will be notified of any adverse or negative reports if required by law.

    c. Important information about Participant's rights under the Fair Credit Reporting Act relating to the Participant's application for the Funding:

        i. The Participant has a right to request disclosure of the nature and scope of the credit investigation.

        ii. The Participant must be told if information in the Participant's file has been used against the Participant.

**EXHIBIT A**
**Ms. Buie's Income Share Agreement**

DocuSign Envelope ID: C3B916A2-0193-48E8-A7B0-0C577E9895F8

THIS IS A COPY
The Authoritative Copy of this record is held at NA3.docusign.net

   iii.   The Participant has a right to know what is in the Participant's file, and this disclosure may be free.

   iv.   The Participant has the right to ask for a credit score (there may be a fee for this service).

   v.   The Participant has the right to dispute incomplete or inaccurate information.

   vi.   Consumer Reporting Agencies must correct or delete inaccurate, incomplete, or unverifiable information.

   vii.   More information can be found at http://www.consumerfinance.com/learnmore/

13. **Limitation on Liability.**   In no event shall Funder be liable for any indirect, special, incidental, or consequential damages or expenses for any negligence, breach of contract, or any other act arising out of or relating to this Agreement, the relationship between Funder and Participant, and/or the obligations created or covered herein.  Funder's liability to Participant for any breach of this Agreement shall be capped at the amount of the Funding.

14. **Change in Contact Information.**   The Participant must provide changes in address or other contact information to Funder as soon as such change becomes effective.

15. **Dispute Resolution/Arbitration (INCLUDING OPT-OUT RIGHTS).**
    \*\*\*If you are a "Covered Borrower" as defined by the Military Lending Act (32 CFR §232, as amended from time to time) at the time of entering into this Agreement, this section 15 Arbitration Agreement is not applicable, and you do not need to opt out of or take any action to ensure inapplicability.\*\*\*

    a.   **Arbitration Provision.**

       i.   **Except as provided below, any claim or dispute, whether in contract, tort, statute or otherwise (including the interpretation and scope of this Arbitration Provision, and the arbitrability of the claim or dispute), between the Participant or Funder or Funder's employees, agents, related third parties, successors, or assigns, which touches upon, arises out of, or relates to the Participant's application, disclosures given to the Participant, this contract, any resulting transaction or relationship (including any such relationship with third parties who do not sign this contract), the servicing of the Participant's contract, Payments or periods of nonpayment, or any rights arising under this contract, state, or federal law shall be resolved by binding arbitration and not by a court action.**

       ii.   **THE ARBITRATOR SHALL NOT CONDUCT CLASS ARBITRATION; THAT IS, THE ARBITRATOR SHALL NOT ALLOW THE PARTICIPANT TO SERVE AS A REPRESENTATIVE, AS A PRIVATE ATTORNEY GENERAL, OR IN ANY OTHER REPRESENTATIVE CAPACITY FOR OTHERS IN THE ARBITRATION.  Further, unless both Participant and Funder agree otherwise in writing, the arbitrator may not join or consolidate Claims with claims of any other persons.  The arbitrator shall have no authority to conduct any class, private attorney general, or other representative proceeding, and shall award declaratory or injunctive relief only in favor of the party seeking relief and only to the extent necessary to provide relief warranted by that party's individual claim.  The arbitrator shall have no authority to issue any relief that applies to any person or entity except Participant or Funder, individually.**

       iii.   Any party to a dispute, including related third parties, may send the other party written notice by certified mail return receipt requested of their intent to arbitrate and setting

**EXHIBIT A**
**Ms. Buie's Income Share Agreement**

DocuSign Envelope ID: C3B916A2-0193-48E8-A7B0-0C577E9895F8

THIS IS A COPY
The Authoritative Copy of this record is held at NA3.docusign.net

forth the subject of the dispute along with the relief requested, even if a lawsuit has been filed. Regardless of who demands arbitration, the Participant shall have the right to select either of the following arbitration organizations to administer the arbitration: the American Arbitration Association (1-800-778-7889) http://www.adr.org, or the National Arbitration Forum (1-800-474-2371) http://www.arb-forum.com. However, the Parties may agree to select a local arbitrator who is an attorney, retired judge, or arbitrator registered and in good standing with an arbitration association and arbitrate pursuant to such arbitrator's rules.

iv.   The Party receiving notice of arbitration will respond in writing by certified mail, return receipt requested, within twenty (20) days. If the Participant demands arbitration, the Participant must inform Funder of the Participant's demand of the arbitration organization the Participant has selected or whether the Participant desires to select a local arbitrator. If related third parties or Funder demands arbitration, the Participant must notify Funder within twenty (20) days in writing by certified mail return receipt requested of the Participant's decision to select an arbitration organization or the Participant's desire to select a local arbitrator. If the Participant fails to notify Funder, then Funder has the right to select an arbitration organization. The Parties to such dispute will be governed by the rules and procedures of such arbitration organization applicable to consumer disputes, to the extent those rules and procedures do not contradict the express terms of this Agreement or the Arbitration Provision, including the limitations on the arbitrator below. The Participant may obtain a copy of the rules and procedures by contacting the arbitration organizations listed above. Any expedited or small-case rules will be applied if part of the rules adopted by the arbitration organization.

v.   Regardless of who demands arbitration, Funder will advance the Participant's portion of the expenses associated with the arbitration, including the filing, administrative, hearing and arbitrator's fees ("Arbitration Fees"). Throughout the arbitration, each Party shall bear his or her own attorneys' fees and expenses, such as witness and expert witness fees. The arbitrator shall apply applicable substantive law consistent with the Federal Arbitration Act ("FAA"), and applicable statutes of limitation, and shall honor claims of privilege recognized at law. The arbitration hearing will be conducted in the county of your residence, or within 30 miles from such county, or in the county in which the transaction under this Agreement occurred, or in such other place as shall be ordered by the arbitrator. The arbitrator may decide, with or without a hearing, any motion that is substantially similar to a motion to dismiss for failure to state a claim or a motion for summary judgment. In conducting the arbitration proceeding, the arbitrator shall not apply any federal or state rules of civil procedure or evidence. If allowed by statute or applicable law, the arbitrator may award statutory damages and/or reasonable attorneys' fees or expenses as limited by this Agreement. If the arbitrator renders a decision or an award in the Participant's favor resolving the dispute, then the Participant will not be responsible for reimbursing Funder for the Participant's portion of the Arbitration Fees. At the timely request of any party, the arbitrator shall provide a written explanation of the award. The arbitrator's award may be filed with any court having jurisdiction and shall be enforceable in such jurisdiction.

vi.   All Parties, including related third parties, shall retain the right to seek adjudication in a small claims (or similar) tribunal for disputes within the scope of such tribunal's jurisdiction. Such tribunal must have a limit on damages of $15,000 or less. Any dispute, which cannot be adjudicated within the jurisdiction of a small claims tribunal, shall be resolved by binding arbitration, as set forth above. Any appeal of a judgment from a small claims tribunal shall be resolved by binding arbitration. Furthermore, nothing in this Arbitration Provisions shall limit the right of the Participant or Funder to obtain

**EXHIBIT A**
**Ms. Buie's Income Share Agreement**

DocuSign Envelope ID: C3B916A2-0193-48E8-A7B0-0C577E9895F8

THIS IS A COPY
The Authoritative Copy of this record is held at NA3.docusign.net

provisional or ancillary remedies such as injunctive relief or seek or obtain any other traditional equitable relief which does not claim money damages from a court having jurisdiction. The Program and maintenance by you or us of any action set forth in this Section shall not constitute a waiver of the right to submit any dispute to arbitration, including any counterclaim asserted.

> **PLEASE READ THIS PROVISION CAREFULLY! BY AGREEING TO THIS ARBITRATION PROVISION, THE PARTICIPANT IS GIVING UP THE PARTICIPANT'S RIGHT TO GO TO COURT FOR CLAIMS AND DISPUTES ARISING OUT OF THIS AGREEMENT.**
>
> **THE PARTICIPANT IS WAIVING THE PARTICIPANT'S RIGHT TO HAVE A TRIAL BY JURY TO RESOLVE ANY DISPUTE ALLEGED AGAINST US OR RELATED THIRD PARTIES.**
>
> **THE PARTICIPANT IS WAIVING THE PARTICIPANT'S RIGHT TO HAVE A COURT, OTHER THAN A SMALL CLAIMS TRIBUNAL, RESOLVE ANY DISPUTE ALLEGED AGAINST FUNDER OR RELATED THIRD PARTIES.**
>
> **THE PARTICIPANT IS WAIVING THE PARTICIPANT'S RIGHT TO SERVE AS A REPRESENTATIVE, AS A PRIVATE ATTORNEY GENERAL, OR IN ANY OTHER REPRESENTATIVE CAPACITY, AND/OR TO PARTICIPATE AS A MEMBER OF A CLASS OF CLAIMANTS, IN ANY LAWSUIT FILED AGAINST US.**

vii.   This Arbitration Provision is made pursuant to a transaction involving interstate commerce and shall be governed by the FAA. If a final non-appealable judgment of a court having jurisdiction over this transaction finds, for any reason, that the FAA does not apply to this transaction, then our agreement to arbitrate shall be governed by the arbitration laws of the State of Indiana.

viii.   This Arbitration Provision is binding upon and benefits you, your respective heirs, successors, and assigns. The Arbitration Provision is binding upon and benefits us, our successors and assigns, and related third parties. The Arbitration Provision continues in full force and effect even if this Agreement is lost, destroyed, or stolen. The Arbitration Provision continues in full force and effect even if your obligations have been refinanced, prepaid, or discharged through bankruptcy. The Arbitration Provision survives any termination, amendment, expiration, or performance of any transaction between you and us, and continues in full force and effect unless you and we otherwise agree in writing. If any part of this Arbitration Provision, other than waivers of class action rights, is deemed or found to be unenforceable for any reason, the remainder shall remain enforceable. If a waiver of class action rights is deemed or found to be unenforceable for any reason in a case in which class action allegations have been made, the remainder of this Arbitration Provision shall be unenforceable.

ix.   Only in the event that the prior, binding arbitration clause is found to be unenforceable, the Participant agrees that all Disputes shall be resolved exclusively in the state and federal courts located in the Marion County, Indiana. The Participant agrees that such venue is the most convenient for the resolution of any such disputes. The Participant waives any defenses based on personal jurisdiction or *forum non conveniens*.

> **RIGHT TO REJECT AND OPT-OUT PROCESS. The Participant may choose to opt out of this Arbitration Provision but only by following the process set forth below. If the Participant does not wish to be subject to this Arbitration Provision, then the**

**EXHIBIT A**
**Ms. Buie's Income Share Agreement**

DocuSign Envelope ID: C3B916A2-0193-48E8-A7B0-0C577E9895F8

THIS IS A COPY
The Authoritative Copy of this record is held at NA3.docusign.net

> Participant must notify Funder in writing within sixty (60) calendar days of the date of this Agreement at the following address provided in the Notices section of this Agreement.  The Participant's written notice must include the Participant's name, address, last four digits of your social security number, the date of this Agreement, and a statement that you wish to opt out of the Arbitration Provision.  The Participant's decision to opt out of this transaction applies to this transaction only and no subsequent transactions with Funder.  The Participant's decision to opt out on subsequent transactions with Funder will only apply to that particular transaction and no previous transactions with Funder.
>
> Participant may reject this Arbitration Agreement by mailing a signed rejection notice to Kenzie Academy Inc., 47 South Meridian Street, STE 302, Indianapolis, IN, 46204, within sixty (60) calendar days after the date of this Agreement.  If you reject this Arbitration Agreement, that will not affect any other provision of the Agreement.

  b. **Attorneys' Fees Available in the Event of Breach.**  In the event of any breach of this Agreement (including but not limited to, those identified above) the non-breaching Party shall be entitled to recover attorneys' fees as provided in Section 8(e).

  c. **Funder's Rights**.  Funder shall have the right to use all means available by law to collect any amounts determined due under this Agreement, including any state-court rights of levy, attachment, garnishment, and/or wage assignment.

16. **Electronic and Telephone Communications Consent.**  Without limiting any other rights Funder, a servicer, a collector, or any person or entity acting on their behalf may have, the Participant consents to Funder, and/or any person or entity acting on their behalf, communicating with the Participant in connection with the application for this Agreement, using any telephone number, email address, or other contact information that the Participant provides in the application, or using any telephone number, email address, or other contact information that the Participant provides in the future. Funder (and/or any person acting on Funder's behalf) may communicate with the Participant using any current or future means of communication, including but not limited to: automated telephone dialing equipment, as defined by law, the FTC, or the FCC; artificial or pre-recorded voice messages; telephone or other electronic facsimile machine; SMS or text messages; and email directed to the Participant at a mobile telephone service, or email otherwise directed to the Participant.  The Participant acknowledges that such communications are informational communications and are not made for the purposes of telemarketing.  Funder (and/or any person or entity acting on Funder's behalf) may use such means of communication even if the Participant will incur costs to receive such telephone messages, telephone calls, SMS or text messages, emails, or other means.

17. **Servicemembers Civil Relief Act ("SCRA").**  If Participant is a "Servicemember" of the U.S. uniformed military services and, after Participant enters into this Agreement, Participant enters "military service," as those terms are defined in the Servicemembers Civil Relief Act (SCRA) at 50 U.S.C. § 3911, Participant's monthly payment will be set at $0.00 and Participant's term will be extended pursuant to Section 3(f)(ii)(3). In order for this limitation to apply, Participant must provide Funder with: (i) written notice of Participant's request, (ii) a copy of the military orders calling Participant to military service, and (iii) any other information Funder reasonably requests to establish eligibility.

18. **Miscellaneous.**

  a. **Sale of Agreement.**  Funder may transfer, assign, or sell this Agreement to another party.  The Funder is entitled to receive Payments from the Participant in accordance with this Agreement for

**EXHIBIT A**
**Ms. Buie's Income Share Agreement**

DocuSign Envelope ID: C3B916A2-0193-48E8-A7B0-0C577E9895F8

THIS IS A COPY
The Authoritative Copy of this record is held at NA3.docusign.net

the remainder of the Term of this Agreement as of the date of transfer, including any accrued but unpaid or past Payments, subject to all other terms and conditions of this Agreement. If such transfer or sale occurs, the Funder will provide notice to the Participant and this Agreement shall continue to be binding on the Participant when such sale occurs. Any changes made by a Funder to the terms of this Agreement will be made in accordance with applicable laws governing changes in terms and will be communicated to the Participant as required by law.

b. **Notices.**

   i. **Timing for Delivery of Notices.** A notice is properly given on the date delivered by hand; on the date sent if transmitted by facsimile with confirmation of transmission; one business day after it is sent if delivered by Federal Express or other express overnight delivery service; or two business days after it is sent by registered or certified mail, return receipt requested, postage prepaid, to the Parties at the addresses set forth below or at such other addresses as may be furnished in writing by a Party.

   ii. **Mailing Addresses of the Parties.** Notices must be provided at the addresses below or at such other addresses as may be furnished in writing by a Party.

      1. **To Funder:**

         Kenzie Academy Inc.
         47 South Meridian Street, STE 302
         Indianapolis, IN 46204

      2. **To Participant:** at the address listed on the first page of this Agreement, unless such is updated by the Participant after the Effective Date.

c. **Severability.** Any part, provision, representation or warrant of this Agreement, which is prohibited, or which is held to be void or unenforceable shall be ineffective to the extent of such prohibition or unenforceability without invalidating the remaining provisions. To the extent permitted by applicable law, the Parties hereto waive any provision of law which prohibits or renders void or unenforceable any provision hereof. If the invalidity of any part, provision, representation or warranty of this Agreement shall deprive any Party of the economic benefit intended to be conferred by this Agreement, the Parties shall negotiate, in good faith, to develop a structure which has the same economic effect as nearly as possible as the economic effect of this Agreement without regard to such invalidity.

d. **Survival.** All obligations contained in this Agreement shall survive for a period of six (6) years following the date the Participant makes his/her last Payment or completes his/her last obligation under this Agreement, whichever comes later. Without limiting the foregoing, the following sections shall survive indefinitely: Recitals, Definitions, Sections 1, 8(e), 9, 14, 15, 16, 18, and any other sections which by their terms should survive beyond the termination of this Agreement.

e. **Counterparts; Facsimile Signatures.** This Agreement may be executed simultaneously in one or more counterparts, each of which shall be deemed an original but all of which together shall constitute one and the same instrument. This Agreement may be executed by facsimile or other electronically transmitted signature. This Agreement shall only be final and enforceable when received by Funder at its location listed in the Notices section of this Agreement.

f. **Governing Law.** This Agreement shall be construed and governed in accordance with the laws of the State of Indiana, without regard to its laws regarding conflicts of law. This Agreement is treated as though entered into and executed by the Parties in the State of Arizona.

# EXHIBIT A
## Ms. Buie's Income Share Agreement

DocuSign Envelope ID: C3B916A2-0193-48E8-A7B0-0C577E9895F8

THIS IS A COPY
The Authoritative Copy of this record is held at NA3.docusign.net

g.   **Tax Advice.**   Funder cannot and will not advise you about the tax treatment of this Agreement. The Participant should seek her/his own taxation advice about how this Agreement might affect her/his tax situation.  The Participant acknowledges that s/he shall be responsible for any and all tax implications as a result of this Agreement and acknowledges that s/he has received *no tax advice* or representations from Funder.  Participant acknowledges that because the appropriate tax reporting is uncertain, the IRS and/or state or local taxing authorities may dispute a method or reporting of Participant's obligations under this Agreement, and new legislation may affect the federal, state, or local tax treatment of this Agreement.  While Funder is under no obligation to do so, it also is possible that Funder may seek a ruling from the IRS during the Term of this Agreement regarding these tax consequences.  Participant agrees and acknowledges that that Participant had an opportunity to consult with a trusted advisor about the tax consequences of entering into this Agreement and receiving funds from the Funder.

h.   **Entire Agreement.**  This Agreement and its exhibits (all of which shall be deemed incorporated in this Agreement and made a part hereof) set forth the entire understanding of the Parties with respect to the terms hereof, supersede all prior discussions, understandings, agreements, and representations, and shall not be deemed modified or affected by any offer, proposal, statement, or representation, oral or written, made by or for any Party in connection with the negotiation of the terms hereof.

i.   **Customer Identification Policy.**  Funder may obtain, verify, and record information that identifies each person who enters into this Agreement.  What this means for a Participant: when Participant enters into this Agreement, Funder reserves the right to ask for Participant's name, address, date of birth, and other information that will allow Funder to identify Participant.  Funder may require Participant to provide a governmental identification, driver's license, or other identifying documents.

j.   **Marital Property.**  If participant is married and lives in Wisconsin on the date Participant signs this Agreement or during the term hereof, Participant's signature on this Agreement confirms that any financial obligation incurred as a result of this Agreement is being incurred in the interest of Participant's marriage or family.  If Participant is married and lives in Texas on the date Participant signs this Agreement or during the term hereof, Participant agrees to hold Personal Income in a separate bank account from Participant's spouse.

k.   **Third Parties.**  Nothing herein expressed or implied is intended or shall be construed to confer upon or give to any person, other than the Parties to this Agreement, any rights or remedies under or by reason of this Agreement.

l.   **Waivers and Remedies.**  The waiver by any of the Parties of any other Party's prompt and complete performance, or breach, or violation of any provision of this Agreement shall not operate nor be construed as a waiver of any subsequent breach or violation, and the waiver by any of the Parties of the exercise of any right or remedy which it may possess shall not operate nor be construed as a bar to the exercise of such right or remedy by such party upon the occurrence of any subsequent breach or violation.

m.   **Amendment.**  Except for those terms, such as Fees, that may be amended by Funder upon notice to Participant, this Agreement may not be amended, restated, supplemented, or otherwise modified except by an instrument, in writing, signed by Funder and Participant.

[Remainder of this Page Left Intentionally Blank]

# EXHIBIT A
## Ms. Buie's Income Share Agreement

DocuSign Envelope ID: C3B916A2-0193-48E8-A7B0-0C577E9895F8

THIS IS A COPY
The Authoritative Copy of this record is held at NA3.docusign.net

**NOTICE TO PARTICIPANT**
1.  **Do not sign this ISA before you read it or if it contains any blank terms.**
2.  **You are entitled to a completely filled-in copy of this Agreement.**
3.  **You have the right to pay off this Agreement in advance by paying the amount set Section 5.**

**PARTICIPANT:  By signing below, you acknowledge that you have read this entire Agreement carefully and agree to its terms, including the provisions of Section 15 dealing with arbitration and your right to opt-out of arbitration.**

The Parties have executed and delivered this Agreement as of the Effective Date above written.

| Funder | Participant |
|---|---|
| **Kenzie Academy Inc.** | Nina  Buie |
| Signed: | Signed: |
| Name:    Chok Ooi | Name:    Nina  Buie |
| Date:               09/15/2020 | Date:               09/15/2020 |

**EXHIBIT A**
**Ms. Buie's Income Share Agreement**

DocuSign Envelope ID: C3B916A2-0193-48E8-A7B0-0C577E9895F8

THIS IS A COPY
The Authoritative Copy of this record is held at NA3.docusign.net

### KEY DEFINITIONS

1. "**Annual Payment Obligation**." The Annual Payment Obligation is the Payment Percentage multiplied by the Participant's Annual Personal Income for a given year (adjusted proportionally in years where the Term covers only a portion of the year).

2. "**Annual Personal Income**" has the meaning ascribed to it in Section (3)(f)(ii)).

3. "**Arbitration Fees**" has the meaning ascribed to it in Section 15(a)(v).

4. "**Disabled**" or "**Disability**" means when a Participant is medically or physically unable to work due to her/his health or other physical condition, as substantiated by a letter from a medical doctor or a certificate from a State or Federal entity stating that the Participant is "totally" disabled or unable to maintain full time employment.

5. "**Estimated Annual Income**." An estimate of the Participant's Annual Personal Income for the year, calculated based on Informal Income Documentation submitted by the Participant to the Funder.

6. "**Fees**" means the fees that are recoverable by Funder under this Agreement. Fees are more fully described in Exhibit A.

7. "**Formal Income Documentation**" has the meaning ascribed to it in Section 3(f)(i)

8. "**Funder**" is Kenzie Academy Inc., or any entity or individual to which this Agreement is validly assigned by Kenzie Academy Inc. Such Funder shall be subject to and benefit from the rights and obligations created under this Agreement.

9. "**Funding**." In consideration of the promises made by Participant as set forth in this Agreement, Funder agrees to provide the Funding to Participant in the amount of        $23900        .

10. "**Future Income**" shall mean those amounts that Participant may receive in the future as income that will serve as the basis for calculating the Payments linked to a Participant's income.

11. "**Grace Period**" means the period of time set forth in Section 3(d)(ii).

12. "**Income Threshold**" means the amount of money set forth in section 3(e)(5)(i).

13. "**Informal Income Documentation**" means a copy of a paystub from Participant's employer containing salary or hourly wage information, or alternative verifiable source of income acceptable to Funder.

14. "**Monthly Payment(s)**" means the Payments, linked to Participant's income, that Participant is required to make monthly

15. "**Payment Percentage**" The Payment Percentage shall be    13%    of the Participant's Personal Income.

16. "**Payments**" means the Monthly Payments and Reconciliation Payments, if any, the Participant is required to make under this Agreement.

17. "**Payment Cap**" means the maximum financial obligation Participant will have to pay to Funder, as set forth on the first page of this Agreement, excluding fees.

**EXHIBIT A**
**Ms. Buie's Income Share Agreement**

DocuSign Envelope ID: C3B916A2-0193-48E8-A7B0-0C577E9895F8

THIS IS A COPY
The Authoritative Copy of this record is held at NA3.docusign.net

18. "**Pension Plans**" is defined to include income received by a Funder that takes the form of "defined benefits" plans. It does not include other sources of retirement income that would be considered "defined payment" plans. Pension Plans can be counted toward Full Time Employment.

19. "**Personal Income**" is defined as all:

    a. Pre-tax (gross) wages, salaries, tips, and commissions earned by the Participant from all employers in each tax year. (For illustrative purposes, as of the most recent tax year preceding this contract, for individual income tax filers using Internal Revenue Service (IRS) Form 1040, this value appears on Line 7).
    b. Taxable interest. (For illustrative purposes, as of the most recent tax year preceding this contract, for individual income tax filers using Internal Revenue Service (IRS) Form 1040, this value appears on Line 8a).
    c. Dividends (except for partnership distributions or those paid from enterprises at which the Participant is employed). (For illustrative purposes, as of the most recent tax year preceding this contract, for individual income tax filers using Internal Revenue Service (IRS) Form 1040, this value appears on Line 9).
    d. Business income. (For illustrative purposes, as of the most recent tax year preceding this contract, for individual income tax filers using Internal Revenue Service (IRS) Form 1040, this value appears on line 12).
    e. Capital gains (or losses) paid to the Participant. (For illustrative purposes, as of the most recent tax year preceding this contract, for individual income tax filers using Internal Revenue Service (IRS) Form 1040, this value appears on Line 13).
    f. Benefits from Pension Plans. (For illustrative purposes, as of the most recent tax year preceding this contract, for individual income tax filers using Internal Revenue Service (IRS) Form 1040, this value appears on Line 16a).
    g. Self-employment income earned by the Participant. (For illustrative purposes, as of the most recent tax year preceding this contract, for individual income tax filers using Internal Revenue Service (IRS) Form 1099-MISC, this amount is equal to the sum of Lines 3 and 7).

In the event that Funder obtains insurance on its insurable interest in Participant or funds insurance for Participant, then such Funder-paid insurance shall not be considered Personal Income and the full amount of such Funder-paid insurance shall be payable to Funder and will not factor into Participant's Personal Income. Unemployment benefits received by the Participant shall not be considered part of the Participant's Personal Income. Personal Income shall be as calculated based on the statements on Participant's tax return.

"Personal Income" includes all income reported on a joint income tax return, minus, to the extent documented to Funder's satisfaction, any income earned solely by your spouse or domestic partner that is reported on the joint income tax return.

20. "**Program**" is the educational or training Program or places of learning and training set forth on the first page of this Agreement.

21. "**Payment Term**." The number of years, excluding In-Program and Grace Periods and other deferments, that the Participant must make Payments linked to his or her income. The Term is set forth at the beginning of this Agreement.

22. "**Total Monthly Payments**" shall have the meaning ascribed to it in Section 3(f)(ii)

**EXHIBIT A**
**Ms. Buie's Income Share Agreement**

DocuSign Envelope ID: C3B916A2-0193-48E8-A7B0-0C577E9895F8

THIS IS A COPY
The Authoritative Copy of this record is held at NA3.docusign.net

23.   **"Reconciliation Payment"** means the amount Participant must pay if there is a difference between the Total Monthly Payments the Participant makes during the year and Participant's Annual Payment Obligation for that year.



**EXHIBIT A**
**Ms. Buie's Income Share Agreement**

DocuSign Envelope ID: C3B916A2-0193-48E8-A7B0-0C577E9895F8

THIS IS A COPY
The Authoritative Copy of this record is held at NA3.docusign.net



**HOW TO COMPARISON SHOP:**

Your education and training are important.  You should be aware of different sources of financing available for higher education and workforce training.

Private education loans may be another alternative to ISAs.  For additional information, see: http://www.consumerfinance.gov/paying-for-college

Your program may not be eligible for federal education loans.  For more information about other available loan alternatives please visit: http://www.consumerfinance.gov/paying-for-college

**Income Share Agreement**          Rev. 2/2020                    Page 21 of 22

**EXHIBIT B**
**Simm's April 14, 2023 Collection Letter**



SIMM Associates, Inc.
P.O. Box 7526
Newark, DE 19714
(866) 572-9372 (8am to 9pm, Mon-Fri; Sat 8am-12pm EST)
www.simmassociates.com
April 14, 2023

To: Nina Buie
CREDITOR: Kenzie Academy Inc
BALANCE: $41,900.00
PAST DUE: $1,943.73
ACCOUNT #: Ending in 0607
SIMM Reference #: 20815043

**SIMM Assoc. is a debt collector.** We are trying to collect a debt that you owe to Kenzie Academy Inc. We will use any information you give us to help collect the debt. Your account referenced above is in a delinquent status. As of the date of this letter, you owe $1,943.73. Because of interest, late charges, and other charges that may vary day to day, the amount due on the day you pay may be greater. Hence, if you pay the amount shown above, an adjustment may be necessary after we receive your check, in which event we will inform you before depositing the check for collection.

**Our information shows:**

You have an account with Kenzie Academy Inc account number ending in 0607.

| | |
|---|---|
| As of 03/14/2023 you owed: | $41,900.00 |
| Between 03/14/2023 and today: | |
| You were charged this amount in interest: + | $0.00 |
| You were charged this amount in fees: + | $0.00 |
| You paid or were credited this amount toward the debt: - | $0.00 |
| Total amount of the debt now: | $41,900.00 |

**How can you dispute the debt?**

- **Call or write to us by May 19, 2023, to dispute all or part of the debt.** If you do not, we will assume that our information is correct.

- **If you write to us by May 19, 2023,** we must stop collection on any amount you dispute until we send you information that shows you owe the debt. You may use the form below or write to us without the form. You may also include supporting documents. We accept disputes electronically at customerservice@simmassociates.com.

**What else can you do?**

- **Write to ask for the name and address of the original creditor, if different from the current creditor.** If you write by May 19, 2023, we must stop collection until we send you that information. You may use the form below or write to us without the form. We accept such requests electronically at customerservice@simmassociates.com.
- **Go to www.cfpb.gov/debt-collection to learn more about your rights under federal law.** For instance, you have the right to stop or limit how we contact you.
- Contact us about your payment options.

Notice: See reverse side for important information.

DEPT 647    4949720523043
PO BOX 4115
CONCORD CA 94524

RETURN SERVICE REQUESTED

Nina Buie

**How do you want to respond?**

Check all that apply:
- ☐ **I want to dispute the debt because I think:**
  - ☐ This is not my debt.
  - ☐ The amount is wrong.
  - ☐ Other (please describe on reverse or attach additional information).
- ☐ **I want you to send me the name and address of the original creditor.**
- ☐ **I enclosed this amount:** [ $ ]

Make your check payable to *SIMM Assoc.* Include the reference number 20815043.

Mail this form to:

SIMM ASSOCIATES, INC.
P.O. BOX 7526
NEWARK DE 19714-7526

**EXHIBIT C**
**Simm's October 12, 2023 Collection Letter**

SIMM Associates, Inc.
P.O. Box 7526
Newark, DE 19714
(866) 572-9372 (8am to 9pm, Mon-Fri; Sat 8am-12pm EST)
www.simmassociates.com
October 12, 2023

To: Nina Buie
CREDITOR: Kenzie Academy Inc
BALANCE: $41,950.00
PAST DUE: $1,993.73
ACCOUNT #: Ending in 0607
SIMM Reference #: 20815043

**SIMM Assoc. is a debt collector.** We are trying to collect a debt that you owe to Kenzie Academy Inc. We will use any information you give us to help collect the debt. Your account referenced above is in a delinquent status. As of the date of this letter, you owe $1,993.73. Because of interest, late charges, and other charges that may vary day to day, the amount due on the day you pay may be greater. Hence, if you pay the amount shown above, an adjustment may be necessary after we receive your check, in which event we will inform you before depositing the check for collection.

**Our information shows:**

You have an account with Kenzie Academy Inc account number ending in 0607.

| | |
|---|---|
| As of 09/13/2023 you owed: | $41,925.00 |
| Between 09/13/2023 and today: | |
| You were charged this amount in interest: + | $0.00 |
| You were charged this amount in fees: + | $25.00 |
| You paid or were credited this amount toward the debt: − | $0.00 |
| Total amount of the debt now: | $41,950.00 |

**Notice:** See reverse side for important information.

**How can you dispute the debt?**

- **Call or write to us by November 16, 2023, to dispute all or part of the debt.** If you do not, we will assume that our information is correct.

- **If you write to us by November 16, 2023,** we must stop collection on any amount you dispute until we send you information that shows you owe the debt. You may use the form below or write to us without the form. You may also include supporting documents. We accept disputes electronically at

**What else can you do?**

- **Write to ask for the name and address of the original creditor, if different from the current creditor.** If you write by November 16, 2023, we must stop collection until we send you that information. You may use the form below or write to us without the form. We accept such requests electronically at customerservice@simmassociates.com.

- Go to **www.cfpb.gov/debt-collection** to learn more about your rights under federal law. For instance, you have the right to stop or limit how we contact you.

- Contact us about your payment options.

DEPT 647   5175758523106
PO BOX 4115
CONCORD CA 94524

RETURN SERVICE REQUESTED

Nina Buie

**How do you want to respond?**

Check all that apply:
☐ I want to dispute the debt because I think:
  ☐ This is not my debt.
  ☐ The amount is wrong.
  ☐ Other (please describe on reverse or attach additional information).
☐ I want you to send me the name and address of the original creditor.
☐ I enclosed this amount: $ _____

Make your check payable to SIMM Assoc. Include the reference number 20815043.

Mail this form to:

SIMM ASSOCIATES, INC.
PO Box 7526
NEWARK DE 19714-7526